

CLERK OF DISTRICT COURT
U.S. DIST. OF TX
NORTH DIVISION
FILED

2019 DEC -2  PM 4: 07

DEPUTY CLERK _____

CTJ

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **FEMALE FIREFIGHTER JANE DOE** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **FORT WORTH, TEXAS** | § | |
| **KEN STEVENS, individually,** | § | |
| **FRED JANDRUKO, individually,** | § | |
| **BOB LOMERSON, individually,** | § | |
| **KELLEY GUTIERREZ, individually,** | § | |
| **DUSTIN LINDOP, individually,** | § | |
| **BRYAN BURCH, individually,** | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, FEMALE FIREFIGHTER JANE DOE (hereinafter referred to as "Jane Doe"), Plaintiff, complaining of FORT WORTH, TEXAS, KEN STEVENS, individually, FRED JANDRUKO, individually, BOB LOMERSON, individually, KELLEY GUTIERREZ, individually, DUSTIN LONDOP, individually, and BRYAN BURCH, individually, and for cause of action will respectfully show unto the Court as follows:

## I.
## INTRODUCTION

Plaintiff is a career firefighter who has served the City of Fort Worth with dignity and honor through two decades of service. The events of this lawsuit take place near the end of her career when her tenure at the Fort Worth Fire Department became an unimaginable nightmare. After years of service, Jane Doe became the object of ongoing sexual harassment within the department. The leadership within the department ignored Jane Doe's reports of misconduct and chose to sweep them under the rug without

disciplinary actions taken against the offenders. These actions perpetuated tolerance of a machismo culture within the fire department that treated woman as sexual objects instead of respected co-workers. The continued harassment of Jane Doe without consequence positively reinforced the behaviors of those committing it and emboldened them to escalate their behaviors in furtherance of their own sexual gratification.

As the harassment escalated, Jane Doe was forced to have sexual intercourse with two of her supervisors within the Fort Worth Fire Department. When her abusers within the department were done with her, she was forced to medically retire at a fraction of the pension she had worked over 20 years to obtain. This lawsuit is about the rot that has developed within the Fort Worth Fire Department, and the human suffering that has resulted.

## II.
## MOTION FOR PSEUDONYM

1.    Plaintiff brings this suit under pseudonym in order to protect her privacy and to protect herself from the notoriety and embarrassment of Defendants' predatory actions.

2.    Plaintiff respectfully asks the Court to permit this suit to proceed using a pseudonym and for an order mandating such use in all publicly filed documents.

## III.
## PARTIES

3.    At all times material hereto, Plaintiff Jane Doe was an employee of the City of Fort Worth Fire Department for the City of Fort Worth, Texas which is within the Northern District of Texas.

4.    At all times material hereto, Defendant Fort Worth, Texas operated the Fort Worth Fire Department and was the employer of Plaintiff and Defendants Stevens,

2

Jandruko, Lomerson, Gutierrez, Lindop, and Burch. Defendant Fort Worth, Texas is a political subdivision of the State of Texas and may be served through the Fort Worth City Secretary, Mary Kayser, located at 200 Texas St., Fort Worth, Texas 76102 or wherever she may be found.

5.      Defendant Ken Stevens is an individual residing in Fort Worth, Texas, and may be served at his place of employment at the Fort Worth Fire Department located at 505 W Felix St., Fort Worth, Texas 76115 or wherever he may be found. He is being sued in his individual capacity.

6.      Defendant Fred Jandruko is an individual residing in Fort Worth, Texas, and may be served at his place of employment at the Fort Worth Fire Department located at 505 W Felix St., Fort Worth, Texas 76115 or wherever he may be found. He is being sued in his individual capacity.

7.      Defendant Bob Lomerson is an individual residing in Fort Worth, Texas, and may be served at his place of employment at the Fort Worth Fire Department located at 505 W Felix St., Fort Worth, Texas 76115 or wherever he may be found. He is being sued in his individual capacity.

8.      Defendant Kelley Gutierrez is an individual residing in Fort Worth, Texas, and may be served at his place of employment at the Fort Worth Fire Department located at 505 W Felix St., Fort Worth, Texas 76115 or wherever he may be found. He is being sued in his individual capacity.

9.      Defendant Dustin Lindop is an individual residing in Fort Worth, Texas, and may be served at his place of employment at the Fort Worth Fire Department located at 505 W Felix St., Fort Worth, Texas 76115 or wherever he may be found. He is being sued in his individual capacity.

10.     Defendant Bryan Burch is an individual residing in Fort Worth, Texas, and may be served at his place of employment at the Fort Worth Fire Department located at 505 W Felix St., Fort Worth, Texas 76115 or wherever he may be found. He is being sued in his individual capacity.

## IV.
## JURISDICTION AND VENUE

11.     The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

12.     On or about May 4, 2019, Plaintiff filed a Charge of Discrimination ("Charge") with the Texas Workforce Commission – Civil Rights Division, ("TWC"), and the Equal Employment Opportunity Commission, ("EEOC"), alleging illegal sexual harassment, retaliation, disability discrimination, and constructive discharge.

13.     Plaintiff's claims under the Civil Rights Act of 1964, (as amended), 42 U.S.C. § 2000e et. seq. ("Title VII"), are being commenced within the required statutory time limits of Title VII as (a) the charge was filed within 300 days of the sexual harassment, assault, retaliation, and constructive discharge, (b) the charge was filed with 300 days of the last acts of sexual harassment or conditions that led the her constructive discharge, and (c) this lawsuit is being filed within 90 days of the Notice of Right to Sue having been issued by the EEOC on November 27, 2019.

14.     Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 because at least one of the Defendants is domiciled and resides in the Northern District of Texas, and all or a substantial part of the cause of action accrued in the Northern District.

## V.
## FACTS AND ALLEGATIONS

15.    Jane Doe began working for the City of Fort Worth Fire Department (the "FWFD") in 1997. She rose quickly through the ranks, becoming a trailblazer and one of the most prominent female firefighters within the FWFD.

16.    Jane Doe had a sterling record which reflected her commitment to service and determination to compete and succeed in a traditionally male-dominated profession. Until 2013, Jane Doe never had a problem with her employment; she had never received a reprimand and was even chosen to be depicted on advertisements for the Fort Worth Fire Department to aid its efforts of recruiting more women into the FWFD. However, in May of 2013, Jane Doe's nightmare within the FWFD began.

17.    From the summer of 2009 until the summer of 2013, Jane Doe worked as an engineer in the fire alarm dispatch office. She worked a Sunday shift which lasted twenty-four hours and a Tuesday shift which lasted sixteen hours.

18.    Jane Doe worked with a man named Patrick Dudley who was scheduled on the same Sunday and Tuesday shifts as her. Patrick Dudley had a documented history of PTSD that culminated in sporadic outbursts of violence against other co-workers. He had previously threatened to kill co-workers on two prior occasions.

19.    On or about Mother's Day in May of 2013, Jane Doe greeted her supervisor, Robin Clay, and Patrick Dudley with an over-the-shoulder tap. Mr. Dudley, a physically imposing man, went into a ballistic rage upon being touched; his violent outburst, targeted at Jane Doe, ended with Mr. Dudley threatening to kill Jane Doe.

20.    Mr. Dudley eventually ceased his aggression and Jane Doe reported the incident to her immediate supervisor. Lt. Carol Woodard Jones initially handled the complaint in place of Captain Ralph Diamond until Cpt. Diamond returned to his

position. Jane Doe was forced to continue working with Mr. Dudley for close to two weeks following the violent episode without any form of disciplinary action taken against Mr. Dudley for his third violent outburst against a co-worker.

21.    The complaint was run up the chain of command to Support Services Chief Ken Stevens. Chief Stevens was in charge of the administration office of the FWFD and had the authority to hire, fire, and reprimand FWFD employees. Around this time, he was a candidate for promotion to Deputy Chief, which he eventually received.

22.    Because of Chief Stevens' policy of maintaining the status quo among his male subordinates, and due to his desire to keep a clean administrative record while he was in the running to become a Deputy Chief, Chief Stevens did not take disciplinary action against Mr. Dudley—he punished the female victim.

23.    Instead of Mr. Dudley receiving a reprimand, Chief Stevens transferred Jane Doe to another fire alarm shift—this greatly disrupted her schedule and disrupted her ability to care for her young daughter.

### The Second Transfer

24.    Despite the significant disruption to her family life, Jane Doe continued to work in her new shift under the supervision of Lieutenant Carol Woodard Jones. Lt. Woodard Jones was a friend of Mr. Dudley who took issue with Jane Doe reporting Mr. Dudly's outburst and violent behavior.

25.    Lt. Woodard Jones had a well-known history of disagreement and confrontation with coworkers and subordinates she did not like. Lt. Woodard Jones attempted to find errors in every aspect of Jane Doe's job performance and even suggested that she would make Jane Doe "pay for" reporting Mr. Dudley.

26.     Lt. Woodard's treatment was so pervasive that it had negative effects on Jane Doe's health. Jane Doe was diagnosed with epilepsy and her doctors informed her that increased stress was a contributing factor to increasing the frequency and magnitude of her epileptic episodes. Lt. Woodard Jones' treatment and uninvited scrutiny of Jane Doe had that effect upon her.

27.     During this time, Jane Doe's doctors gave her a recommended work restriction due to the increased frequency and magnitude of her seizures. Jane Doe informed the fire department of her seizures and was placed on light duty until she was medically cleared to return to her full duties two months later.

28.     Eventually, Jane Doe had enough of Lt. Woodard Jones' harassment and made a formal complaint regarding her treatment to Chief Stevens.

29.     In conformity to his response to Mr. Dudley's violent episode, Mr. Stevens again failed to address the issue with Jane Doe's harasser and instead moved her to a different position without any reprimand issued to Lt. Woodard Jones.

### *Jane Doe is Subject to Unrelenting Sexual Misconduct and Harassment from Captain Fred Jandruko:*

30.     Fort Worth did not give sexual harassment training to FWFD employees the entire time that Jane Doe worked for the department.

31.     Jane Doe was transferred to work in the supply warehouse in the summer of 2013 under the supervision of Captain Fred Jandruko. Almost immediately—within a week—Jane Doe was subject to sexual innuendo and unwanted sexual advances by her supervisor, Defendant Jandruko.

32.     Defendant Jandruko was open about his advances and would slap Jane Doe on the buttocks, grab her arm to make physical contact whenever possible, and would

7

speak sexually suggestive innuendos to her and about her in the presence of other co-workers and firefighters working in supply.

33.     The unwanted and pervasive behavior continued for several months as Jane Doe tried to deflect and disarm the situation. Jane Doe made any and all attempts to avoid physical interaction with Defendant Jandruko who continued to find ways to place Jane Doe in positions where the two of them were together.

34.     On one occasion, Defendant Jandruko asked Jane Doe to ride with him in a FWFD vehicle for a work-related project. Once in the vehicle, Defendant Jandruko conveyed to Jane Doe that he received notification that an alarm had alerted at his home and he needed to check on it. The thought made Jane Doe uncomfortable given Defendant Jandruko's open and recent sexual advances he made toward her.

35.     Defendant Jandruko drove the FWFD vehicle outside of Tarrant county to his home in Burleson and asked Jane Doe to come inside with him. However, Jane Doe refused as she felt the situation was odd and inappropriate. Additionally, Jane Doe did not hear an alarm coming from the home. Defendant Jandruko made repeated and escalating attempts to get Jane Doe to come inside his house; however, Jane Doe continued to refuse his advances.

36.     Eventually, Defendant Jandruko went inside the home, and after several minutes, returned to the vehicle. Defendant Jandruko was visibly upset after Jane Doe refused to go inside his house.

37.     Following this incident, Defendant Jandruko's sexual and harassing advances became more pervasive and frequent. On May 17, 2014, Defendant Jandruko sent a sexually charged text message expressing his desire to see Jane Doe in a revealing negligée, even going so far as sending her an image of what he wanted her to wear.

38.     Jane Doe attempted to disarm and de-escalate the situation by texting back to Defendant Jandruko that she enjoyed working within her position, that she did not want Defendant Jandruko to get the wrong impression of her, and that she was only interested in keeping a professional relationship between themselves. Defendant Jandruko was not receptive to Jane Doe's words or attempts to get him to stop, and he continued his behavior.

39.     Jane Doe was unnerved, but nevertheless was placed in an unenviable position of either continuing to tolerate Defendant Jandruko's advances or having to report the inappropriate conduct of her supervisor. To be clear, the FWFD is a male-dominated environment where employees are required to live and interact with each other in a fire station for days on end.

40.     When a female such as Jane Doe enters the mix, it complicates the mix of ego and machismo. To turn away a male supervisor is not an easy task for any female employee, but for a female firefighter who essentially lives with her male counterparts, it becomes an exponentially more difficult task. Nevertheless, Jane Doe was placed in this no-win situation.

41.     Following their text exchange, Jane Doe reported Defendant Jandruko's unwanted advances to Defendant Stevens, then the Support Services Chief. Two weeks later, a meeting was held, where Jane Doe explained Defendant Jandruko's behavior and provided the text message exchange with Defendant Stevens as evidence of his sexually charged conduct towards her.

42.     Defendant Stevens, who was still lobbying for a position as Deputy Chief, was now faced with three complaints against three individuals directly under his supervision: Patrick Dudley, Lt. Woodard Jones, and Defendant Jandruko. Instead of

doing his job and addressing the complaints, Defendant Stevens decided to bury the complaint, to let Defendant Jandruko's behavior slide, and to keep Jane Doe out of sight and out of mind until he had secured his promotion.

43.   Defendant Stevens' told Jane Doe "not to mention or discuss with anyone" the events, but instead to gather her belongings and immediately report to Station 8 for reassignment.

44.   Defendant Stevens once again punished Jane Doe through transferring her to another position within the FWFD and sparing her harasser from any discipline despite evidence of Defendant Jandruko's sexually inappropriate behavior towards his subordinate. The transfer once again negatively impacted Jane Doe's schedule, including her outside of work responsibilities with her daughter.

45.   In addition to impacting when and where she was working, the transfer acted as a demotion as to the type of work Jane Doe was assigned. At Station 8, Jane Doe was relegated to clerical duties and tucked out of the way. Whereas she was trained and skilled as an engineer in the FWFD, she was now assigned menial tasks which fell well below her qualifications.

46.   Jane Doe was an engineer: she had trained for 17 years in the FWFD, and now she had been dropped to the bottom of the totem pole in a position that was meant to keep her out of sight and out of mind in retaliation for her reporting sexual harassment within the department.

47.   On top of this, due to the retaliatory transfer, her schedule was again disrupted and her ability to raise her daughter was inhibited—all of which manifested in anxiety, stress, and increased epileptic episodes.

48.     Jane Doe was a 17-year veteran within the FWFD at this point and being placed in this position made her feel worthless. Not only had she been harassed over the course of the last three years of her career, but now she was nearing eligibility for full retirement and felt financial pressure to endure and tolerate mistreatment until her pension vested.

49.     Jane Doe was concerned that her employer's retaliation for her speaking up about the ongoing misconduct would escalate from transfers to termination.

50.     Jane Doe. continued to work at Station 8 for several months when she noticed a job opening at Station 35 Alliance Airport ("Station 35A"). Jane Doe placed a request for transfer and was awarded the position because of her extensive qualifications and tenure.

### Jane Doe is the Continued Target of Sexual Misconduct:

51.     Upon arrival at Station 35A in the summer of 2014, Jane Doe was excited for a fresh start. She was given a one day on and two days off schedule which not only allowed her to work as an engineer, but also allowed her time with her daughter.

52.     Jane Doe was under the supervision of Captain Bob Lomerson, who Jane Doe had met during her first year in the FWFD.

53.     As she befriended her coworkers within Station 35A, she confided in them how excited she was about working at the station, how important her new schedule was to caring for her daughter, and her prior experiences with Dudley, Woodard Jones, and Jandruko which she believed to be the exception at this point in her career instead of the norm. Little did she know that some of her new coworkers would use that information to their advantage against her.

11

54.     While Jane Doe had always viewed Defendant Lomerson as a friend, the fraternity culture within the FWFD emboldened Defendant Lomerson to believe he was entitled to harass and objectify his female subordinate, and he knew that he would get away with it just like Defendant Jandruko. Like in her previous position, Defendant Lomerson began making explicit sexual advances and innuendos toward Jane Doe.

55.     Defendant Lomerson created tasks for Jane Doe that were outside of normal procedure—tasks that left the two of them alone together. Defendant Lomerson would continually ask Jane Doe to perform "practice runs" around the airport that only involved the two of them. During these "practice runs" Defendant Lomerson would attempt to become physical with Jane Doe.

56.     Defendant Lomerson's actions were not constrained to the workplace. While Jane Doe never provided her home address to Defendant Lomerson, he started showing up to her house unannounced. Jane Doe became concerned by Defendant Lomerson's behavior as this is the environment that she had just left with Defendant Jandruko.

57.     Jane Doe was concerned for her future and the thought of reporting another supervisor and being transferred again weighed heavy on her decision to remain silent about Defendant Lomerson's sexually inappropriate conduct.

58.     Jane Doe continued to try and remain cordial with Defendant Lomerson and kept his advances at arm's length, while being cognizant of her all-male environment and not attempting to disrupt the otherwise healthy relationship she had with most of her co-workers.

59.     Defendant Lomerson made Jane Doe feel as though her job was conditioned on her playing along to his advances – she felt trapped and scared to speak out or reject his behavior for fear of losing her job within the Station.

60.     Over the course of a year at Station 35A, Defendant Lomerson's trips to Jane Doe's home increased, and he would frequently send text messages saying that he knew Jane Doe was home when she did not answer the door, and stating that her behavior in not answering the door was unacceptable given how long they had known each other. Defendant Lomerson implied that Jane Doe owed him something due to them having known each other for so long.

### Defendant Lomerson Escalates his Conduct and Sexually Assaults Jane Doe

61.     The trips to Jane Doe's house culminated in an event where Defendant Lomerson showed up at her residence uninvited. This incident took place around September of 2015.

62.     Jane Doe was in her back yard in the evening time watering the plants in her garden. She did not have any of her relatives over and her daughter was with her ex-husband that day. It was rare for Jane Doe to be alone at home, particularly when Defendant Lomerson would come over to her house.

63.     Defendant Lomerson entered Jane Doe's back yard unannounced and uninvited. Defendant Lomerson proceeded to move toward Jane Doe and said, "this is going to happen, and it is about time, I have waited long enough." Defendant Lomerson bent Jane Doe over, removed her clothes, and forced himself upon her until ejaculation.

64.     Jane Doe was shocked when Defendant Lomerson arrived at her home and did not know how to respond to his visit, his words, or his actions. She was visibly upset but froze during the assault until Defendant Lomerson was finished. She did not consent

to the encounter. As the assault occurred, thoughts were racing through her mind over what was happening to her and why it was happening.

65.    At the conclusion of Defendant Lomerson's sexual assault upon Jane Doe, Defendant Lomerson told her not to tell anyone about the encounter and told her that there would be repercussions at work and otherwise if she reported him to the police or to anyone within the Fire Department.

66.    Following the conclusion of the assault, and once Jane Doe had time to process what had happened to her, she made it clear to Defendant Lomerson his actions were not okay and will not continue. Defendant Lomerson made continued threats to Jane Doe that if she spoke out about the encounter it would have grave consequences for her career but started to tone down his language and treatment of her following this confrontation.

### *A New Problem Arises:*

67.    Jane Doe did not report Defendant Lomerson's assault on her because she was concerned she would lose her job; she already knew the consequences of reporting her supervisors due to Defendant Stevens' prior actions.

68.    Additionally, Jane Doe had the fear of what Defendant Lomerson would do or say to her if she spoke out. Defendant Lomerson's behavior and prior text messages demonstrated that he had the capacity to make good on his threats.

69.    After Defendant Lomerson's relentless pursuit subsided, Jane Doe began to feel less pressure and had hoped that the worst of her treatment was over. She was also given use of a private room upstairs at Station 35A which would serve as her quarters during her shift. This was a perk that was given to firefighters based upon their qualifications and years of service.

14

70.    The FWFD does not have designated quarters for female employees.

71.    However, as early as June of 2016 a problem arose in the form of Battalion Chief Kelley Gutierrez. Jane Doe had met Defendant Gutierrez while in service of the FWFD, but they had never had significant interactions.

72.    Defendant Gutierrez transferred into Station 35A, and upon encountering Jane Doe, he explained he transferred his quarters to the station "to be near her," and that he had wanted to be closer to her for the past 20 years. Jane Doe was one of only a handful of female firefighters in the FWFD.

73.    Jane Doe attempted to address Defendant Gutierrez's intentions up-front and informed Defendant Gutierrez she was in a committed relationship and that she was otherwise not interested in a relationship with a married man. Despite Jane Doe's clear and forward rejections, Defendant Gutierrez nevertheless continued his pursuit.

74.    Defendant Gutierrez sent graphic and sexually inappropriate text messages to Jane Doe throughout 2016 and 2017. Defendant Gutierrez also made implicit threats that her job would be affected, or that he would take away Jane Doe's quarters if she did not play along. Jane Doe continued to reject these advances.

75.    Defendant Gutierrez was yet another supervisor who attempted to use his position of power over Jane Doe to solicit sexual gratification at the threat of her continued ability to work within the location and role she was serving. The male supervisors in the FWFD saw her as a sexual object to exploit, and not as a person working on their team and alongside them.

76.    Like Defendant Lomerson, Defendant Gutierrez began showing up at Jane Doe's house unannounced and made explicit sexual advances toward her; all despite him

having a family at home. Jane Doe continued to reject his sexual advances until Defendant Gutierrez decided he would no longer take no for an answer.

***A Second Forced Sexual Encounter:***

77.    In late 2017, Jane Doe finished her work at Station 35A and went to her private quarter's upstairs. Without knocking and without notice, Defendant Gutierrez opened the door to Jane Does' quarters and locked it behind him after he entered.

78.    Jane Doe asked Defendant Gutierrez what he was doing, and Defendant Gutierrez responded: "We are going to have some alone time," and began moving towards Jane Doe, initiating physical contact with her.

79.    Jane Doe responded to Defendant Gutierrez by saying "Don't do this to me" as Defendant Gutierrez forcibly held her down and forced himself inside of her. Jane Doe repeatedly told Defendant Gutierrez to stop and cried as he assaulted her.

80.    After Defendant Gutierrez finished, he told Jane Doe "this never happened" and left.

81.    The second assault affected Jane Doe in a different way than Defendant Lomerson's assault. Where Defendant Lomerson assaulted her at home, it occurred off-duty and outside of the fire station. Defendant Guitierrez, on the other hand, was brazen enough to force himself upon her within the fire station and while they were on duty.

82.    The perk she was given was used against her, and she was assaulted in a place where she believed she would be safe. Jane Doe's reaction was mired by shame, guilt, and disgust as she once again questioned what she did to deserve being assaulted and what she could have done differently as an attempt to rationalize what was happening to her and why she had to suffer.

83.     Jane Doe knew her job was in jeopardy and she knew that speaking out would only provoke the same reaction from Defendant Stevens which he had exhibited three times before—she would be transferred to another station in retaliation for speaking up, and her assaulter would face no repercussions. Jane Doe once again decided to keep the incident to herself and suffer in silence.

### A Third Forced Sexual Encounter:

84.     Following Defendant Gutierrez's sexual assault upon Jane Doe, several months passed in which Defendant Gutierrez continued his innuendo and sexually inappropriate text messages but did not escalate his behavior into sexual contact.

85.     During this time Jane Doe continued to follow Defendant Gutierrez's orders on where to go, what do, and where to conduct meetings.

86.     Around October of 2017, Defendant Gutierrez sent a text for Jane Doe to meet him in his quarters where he also kept an office. After entering the room, Jane Doe saw that they were alone, and Defendant Gutierrez locked the door behind her as she entered.

87.     After Jane Doe entered the room, Defendant Gutierrez said "Get out of them" indicating that she needed to remove her clothes. Jane Doe refused and once again told Defendant Gutierrez to leave her alone. Defendant Gutierrez did not accept Jane Doe's response and once again forced sexual intercourse with her.

88.     At this time Jane Doe felt helpless and emotionless as she was being assaulted a third time. She went into thoughts of self-preservation and knew that she would be threatened by her attackers and ignored by the chain of command at the Fire Department as they had done so in the past.

89.    Following this interaction, Gutierrez continued to state that there would be consequences if Jane Doe reported what he had done to her.

90.    Jane Doe was stuck working for two superior officers who used their positions of power to force her into providing sexual gratification at the risk of losing her job. She felt she had no choice but to continue working for her harassers or face losing the retirement she had worked toward for nearly twenty years. She kept telling herself that if she could tolerate it just a bit longer, she could retire with the security of a full pension, she could work to build a better future for her daughter, and her nightmare would be over.

***Other Members of the FWFD Fraternity Are Emboldened:***

91.    As if word had spread that harassing Jane Doe could go without consequence, other members of the FWFD took turns in creating an unrelenting hell for Jane Doe.

92.    While working at the station, Jane Doe would utilize the recreation facilities to stay in shape. Jane Doe was the only female in Station 35A, surrounded by a group of men who felt there were no repercussions to their actions and felt as though Jane Dane was theirs to harass whenever and in whatever manner they chose.

93.    Around November of 2017, while working out in the recreation room, Lieutenant Dustin Lindop (then her immediate supervisor) came in and began stroking his penis underneath his pants while watching Jane Doe use the Stairmaster. Jane Doe attempted to ignore the situation and Defendant Lindop eventually stopped.

94.    Later that month, Defendant Lindop again found Jane Doe in the recreation room, removed his pants and began masturbating while watching her. Jane Doe tried to ignore him, but Defendant made noises attempting to get her attention until he finished and left.

95.     On November 20, 2017, Jane Doe's daughter was dropped off at the fire station because Jane Doe was not allowed to leave until after her shift had finished. While Jane Doe's daughter was showing some of Jane Doe's co-workers a dance routine that she had learned, Jane Doe partially bent over to grab her daughter's hand and help her spin.

96.     While bent over, a firefighter named Bryan Burch cocked his hand and slapped Jane Doe's buttocks so hard that he left a red handprint—all of this right in front of Jane Doe's 8-year-old daughter. Jane Doe immediately went to the restroom in tears and took a photo as evidence. The mark developed into a bruise that lasted two weeks.



97.     This incident pushed Jane Doe to a new level of feeling helpless. The harassing behavior had now extended beyond her to her daughter, and she had to find a way to explain to her daughter what had happened and why her mom was crying without telling her daughter things that a child should not have to hear. This incident also took

place in plain sight and in the presence of several other firefighters, including her fire captain, Defendant Lomerson, but they did and said nothing.

98.    Jane Doe made one last attempt to get help from the chain of command and notified her direct supervisor, Defendant Lindop.

99.    Despite Defendant Lindop's recent and pervasive sexual acts toward her, Jane Doe had no other choice but to report the incident to him. In the hierarchical chain of command, Defendant Lindop was her direct supervisor, and Defendant Lomerson— who was present at the time of the assault—had done nothing up to this point.

100.    Instead of reprimanding Defendant Burch for his harassing and assaultive conduct, Defendant Lindop superimposed "finger" and "kiss" emojis over the picture of Jane Doe's buttocks and sent it back to her. Defendant Lindop took no further action and Defendant Burch was never disciplined.



101.    Defendant Lindop thought the assault of Jane Doe was a game—to be clear, this was her immediate supervisor in the chain of command. His response reaffirmed everything that Jane Doe had suspected had she reported the assaults by Defendants Lomerson and Gutierrez.

102.    Following his inadequate response to Defendant Burch's conduct, in December of 2017 while Jane Doe was working out, Defendant Lindop again came into the fitness center, pulled out his erect penis, and began masturbating to Jane Doe while

she was on the Stairmaster. This was Defendant Lindop's third time touching himself in the presence of Jane Doe.

103.    The sexual exploitation, assault, and abuse promulgated by the named Defendants continued well into 2018.

104.    The unrelenting sexual assault and harassment took a significant toll on Jane Doe and her epileptic episodes continued to worsen throughout the rest of 2017 until eventually on December 27, 2017 she was involved in a motor vehicle collision.

105.    While off-duty, Jane Doe had an epileptic seizure and crashed her car. After the incident, Christian Harvey—a captain of the Fort Worth Fire Department— immediately reported her to internal affairs, including her diagnosed seizure disorder. Captain Harvey did not work within Jane Doe's station, and she was not his responsibility.

106.    The Internal affairs division proceeded to take Jane Doe off duty without a hearing or ability to contest their findings. This was due to a condition that the Fort Worth Fire Department was already aware of and had known about for years.

107.    Ultimately, due to the stress, anxiety, and shame she had been under for the past 5 years of her life at the FWFD, Jane Doe was forced into an early medical retirement on July 31, 2018. Jane Doe did so against her will. She was denied her full pension.

108.    Jane Doe had aspirations to continue her career in the FWFD, but the failure of Defendant Stevens to address the rampant fraternity culture that promoted sexual exploitation of female firefighters, the explicit favoritism of men over women, and allowance of unchecked misconduct and sexual mistreatment of females within the FWFD crushed her dream.

109.    Defendants were at all times acting under color of law.

## VI.
## CAUSES OF ACTION

### Count One

### Defendant Fort Worth, Texas

### Causes of Action under Title VII
### (Civil Rights Act of 1964, (as amended), 42 U.S.C.
### § 2000e et. seq.)

110.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein and asserts that the same are moving factors which have resulted in the violation of Plaintiff's civil rights.

111.    Plaintiff has satisfied all jurisdictional prerequisites in connection with her claim under Title VII.

112.    Defendant Fort Worth, Texas is an "employer" as defined by Title VII.

113.    Plaintiff is an "employee" as defined by Title VII.

114.    As discussed above, during the time that Jane Doe was employed by the Fort Worth Fire Department she was subjected to illegal sexual harassment and sexual assault, and this sexually hostile work environment materially affected the terms and conditions of her employment, which ultimately contributed to Jane Doe's constructive discharge. The acts, as described above, were of a continuing and ongoing nature.

115.    In addition, Jane Doe's claims include *quid pro quo* sexual harassment, in that conditions of her employment were predicated on her acquiesce to the sexual advances and forced sexual gratification of her male supervisors.

116.    Specifically, Defendant Lomerson required Jane Doe to perform sexual favors in exchange for the continuation of her employment within the FWFD. Defendant Lomerson's advances, sexually charged messages, and ultimately his sexual encounter

with Jane Doe were done under the guise of a supervisor-subordinate relationship. Jane Doe felt she had no other choice but to comply with Defendant Lomerson's behavior as he directly and implicitly conditioned her employment on Jane Doe's willingness to accede to his sexual demands.

117.   Specifically, Defendant Gutierrez sent relentless sexually charged and explicit messages to Jane Doe and ultimately conditioned Jane Doe's employment upon the suppression of reporting Defendant Gutierrez's forced sexual assault. Defendant Gutierrez's actions were made under the guise of a supervisor-subordinate relation which Jane Doe felt she had no other choice but to comply with in order to maintain her job.

118.   Further, Jane Doe was also subjected to retaliation by Defendant Fort Worth, Texas for engaging in a protected activity as defined by Title VII. Jane Doe spoke out on three occasions regarding discriminatory treatment and practices which were adopted as the FWFD's policy, custom, and practice. In response to her complaints, Jane Doe was not only transferred from her assigned station three times but given a *de jure* demotion in the form of lessened responsibilities, altered hours, and exclusion from her practiced and trained profession. The three separate transfers resulted in the limitation (or perceived limitation) of job prospect, future advancement, career development, and perceived ability to speak out against future harassment and assault in the fear of further retaliation. The continued and pervasive relation which was adopted and promoted by the FWFD was an actual and causal factor in Jane Doe's constructive termination. As described above, Defendant Forth Worth, Texas's retaliation was done intentionally and willfully.

119.   Defendant Fort Worth, Texas failed to implement adequate policies and procedures to address the blatant and obvious sexual harassment and retaliation, nor did

it implement prompt remedial measures. At all times, Defendant Fort Worth, Texas acted with malice and/or reckless indifference to the statutory-protected rights of Jane Doe.

120.    Plaintiff seeks compensatory and punitive damages and costs against Defendant Lindop, and such other relief as justice may require.

**Count Two**

**Defendant Fort Worth, Texas**

**Causes of Action under**
***Monell v. New York City Department of Social Services***
**(Equal Protection Clause and 42 USCA § 1983)**

121.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein and asserts that the same are moving factors which have resulted in the violation of Plaintiff's civil rights.

122.    Plaintiff would show that Defendant Fort Worth is liable because a pattern, practice, custom, or policy of constitutional violations existed and/or there was grossly inadequate supervision, discipline and training that was likely to result in constitutional violations. At the time of Plaintiff's employment with the Fort Worth Fire Department, there was a widespread practice among the Fort Worth Fire Department to discriminate against female employees by way of sexual harassment causing a hostile work environment. The practice was so widespread as to constitute the policy and custom of Fort Worth. Fort Worth failed to provide constitutionally adequate training and supervision regarding the rights of female employees to be free from sexual harassment that creates a hostile work environment. This is evidenced by the continuous, ongoing, and repeated instances of sexual harassment and assault inflicted on Plaintiff by four different supervisors and by a co-worker publicly in the fire station while Plaintiff's daughter was present.

123.    The custom and practice of discriminating against female employees by openly sexually harassing female employees without concern for discipline is demonstrated by the incident where Defendant Burch slapped Plaintiff so hard on the buttocks that he left a red handprint on her buttocks. This was done in the fire station while other employees were watching Plaintiff's 8-year old daughter do a baton routine. Defendant Lomerson was present and witnessed the slap; however, due to the custom and practice of accepting sexual harassment of female employees, Defendant Lomerson did nothing to discipline Defendant Burch. Following Defendant Lomerson's failure to discipline Defendant Burch, Plaintiff sent a picture of Defendant Burch's handprint on her buttocks to her immediate supervisor, Defendant Lindop. However, again, due to the custom and practice of accepting sexual harassment of female employees, Defendant Lindop also did nothing to discipline Defendant Burch. Instead, Defendant Lindop placed "finger" and "kiss" emojis on top of Plaintiff's buttocks in the picture and sent it back to her.

124.    The depth of this custom and practice of discriminating against female employees by openly sexually harassing female employees without concern for discipline can be seen during the incident when Defendant Stevens directed Plaintiff not to speak to anyone about her supervisor, Defendant Jandruko, sending her sexually inappropriate text messages regarding lingerie he wanted to see her wearing. Instead of disciplining Defendant Jandruko, Defendant Stevens attempted to sweep the incident under the rug and then transferred Plaintiff to another fire station, to her detriment.

125.    Defendant Fort Worth was deliberately indifferent to Plaintiff's safety and dignity.

25

126.    An unwritten, although official, policy, custom, or practice was created and implemented of intentionally discriminating against female employees by way of sexual harassment without regard for consequences, which established a hostile work environment for female employees such as Plaintiff in this case. This policy, custom or practice was created with deliberate indifference to the safety and dignity of female employees, such as Plaintiff. This policy was in effect throughout Plaintiff's employment with the Fort Worth Fire Department and this policy caused her injuries.

127.    Defendant Fort Worth knew that allowing sexual harassment against female employees, to the point that it caused a hostile work environment, would likely and probably lead to injury to the female employees. Yet despite this knowledge, Defendant Fort Worth failed to train or supervise its male employees on the need to treat female employees with respect and to refrain from sexually harassing and assaulting them, and failed to discipline male employees under their direct supervision who actually did sexually harass and assault female employees, such as Plaintiff in this case.

128.    Defendants and their employees, acting according to policy, custom, or practice, made the actual decision not to discipline Defendant Jandruko after he sent a sexually inappropriate text message to Plaintiff regarding lingerie he wanted her to wear, and in doing so, acted with deliberate indifference to Plaintiff's safety. Defendant Fort Worth knew that failing to discipline or supervise male employees, specifically supervisors with authority and power over female employees, would likely lead to female employees, namely Plaintiff, being injured by way of continuing sexual harassment, but intentionally, deliberately, or recklessly disregarded that risk.

129.    Defendants and their employees, acting according to policy, custom, or practice, made the actual decision to fail to discipline or supervise Defendant Burch after

he slapped Plaintiff's buttocks so hard he left a handprint on her buttocks, and in doing so, acted with deliberate indifference to Plaintiff's safety. Defendant Fort Worth and the Fort Worth employees involved knew that failing to discipline or supervise male employees, specifically those that openly and publicly committed sexual harassment and sexual assault, would likely lead to her being injured as the sexual harassment was escalating, but intentionally, deliberately, or recklessly disregarded that risk.

130.   Defendant Fort Worth's employees continued to sexually harass and assault Plaintiff, knowing that this would be embarrassing, degrading and humiliating to Plaintiff and that it was a violation of her constitutional right to be free from sexual harassment causing a hostile work environment under the Equal Protection Clause of the United States Constitution. In doing so, Defendant Fort Worth acted with deliberate indifference to Plaintiff's safety and dignity. Defendant Fort Worth knew that openly allowing sexual harassment of female employees such as Plaintiff would likely lead to mental and emotional injury, but intentionally, deliberately, or recklessly disregarded that risk. Defendant Fort Worth knew that openly allowing sexual assault of female employees such as Plaintiff would likely lead to her being physically injured and emotionally scarred, but intentionally, deliberately, or recklessly disregarded that risk.   Defendant Fort Worth failed to train Fort Worth male employees on the appropriate way to interact with female employees, which is with respect and dignity, and failed to supervise and discipline employees under their direct supervision who sexually harassed and assaulted female employees such as Plaintiff. In doing so, Defendant Fort Worth violated Plaintiff's constitutional rights guaranteed to her through the Equal Protection Clause of the United States Constitution.

131.   Defendant Fort Worth knew or should have known at the time of the occurrence that this was a situation which their female employees, such as Plaintiff, would have to deal with on a regular basis. Similarly, Fort Worth knew or should have known that this situation had the real potential for injury and serious harm to an employee. Despite that, Defendant Fort Worth retained the policy and at the same time provided no training or inadequate training to employees on how to deal with this situation.

132.   The above practices, policies, and customs, as well as the constitutionally inadequate training, by Defendants constituted deliberate indifference towards Plaintiff's constitutional rights and the safety and dignity of female employees. The subsequent violation of those constitutionally protected rights was a direct and foreseeable cause of her injury. As a result, Plaintiff is entitled to recover actual damages as a matter of law. Plaintiff sues Fort Worth for actual damages. The practices, policies, and customs and/or the constitutionally inadequate training were the moving forces behind the constitutional violations that resulted in the mental, emotional, and physical injuries of Plaintiff.

133.   Fort Worth employees have engaged and continue to engage in a pattern or practice of sexually harassing female employees to the point of causing a hostile work environment.

134.   Defendant Fort Worth and the Fort Worth Fire Department, directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, consciously indifferent, and wanton conduct of the Fort Worth employees heretofore described.

135.   At all times relevant to this Complaint, the Fort Worth employees involved in the violation of Plaintiff's constitutional rights were acting under the direction and control of Defendant Fort Worth.

136.   During all relevant times, Fire Chief Rudy Jackson served as policy maker for Fort Worth in relation to the policies, written and unwritten, regarding policies and employees of the Fort Worth Fire Department.

137.   The policymakers of Defendant Fort Worth – the City Counsel, City Manager David Cooke, and Fire Chief Rudy Jackson – were aware of the policies, practices, customs, and failures to train, discussed above and knowingly ratified these policies, practices, customs, and failures to train with deliberate indifference to the constitutional violations that these policies, practices, customs, and failures to train were directly causing.

138.   The Fire Department's custom, practice, and policy allowing the sexual harassment and assault of female employees was known by Fort Worth policymakers to be unconstitutional and dangerous; however, the Fort Worth policymakers ratified the inappropriate conduct and permitted Plaintiff's injuries.

139.   Defendant Fort Worth has enforced these policies, practices, and customs despite knowing that failing to supervise and discipline male employees engaging in sexual harassment of female employees left the female employees at high risk for serious harm. As a result, Defendant Fort Worth has acted with deliberate indifference to the risk of serious harm of female employees working in the Fort Worth Fire Department, such as Plaintiff in this case.

140.   The actions and inaction of Defendant Fort Worth were a proximate cause of Plaintiff's injuries and the suffered damages described herein.

## Count Three

## Defendant Jandruko

## Sexual Harassment

## (Equal Protection Clause and 42 USCA § 1983)

141.    To state a viable claim under 42 USCA § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.

142.    Sexual harassment in public employment violates the Equal Protection Clause of the Fourteenth Amendment and is therefore actionable under 42 USCA § 1983. *Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007).

143.    Defendants Jandruko was acting under color of state law when he performed acts constituting sexual harassment of Plaintiff.

144.    For sexual harassment to be actionable, the harassment must be severe or pervasive. *Id.*

145.    The required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct. *Lauderdale* F.3d at 163.

146.    An egregious, yet isolated, incident can be severe enough to alter the terms, conditions, or privileges of employment and constitute a hostile work environment. *Id.*

147.    Likewise, frequent incidents of harassment, though not severe, can reach the level of "pervasive," thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists. *Id.*

148.    Defendant Jandruko's behavior rises to the level of actionable harassment as it is severe and pervasive.

149.    Defendant Jandruko subjected Plaintiff to sexual innuendo and unwanted sexual advances for months.

150.    Defendant Jandruko's inappropriate sexual advances escalated to him sending a sexually explicit text message to Plaintiff expressing his desire to see Plaintiff in revealing lingerie.

151.    The right to be free from sexual harassment that creates a hostile work environment is clearly established. *Lauderdale* F.3d at 166.

152.    Sexual harassment is objectively offensive and unreasonable, and qualified immunity can never offer protection for sexual harassment. Id.

153.    No reasonable person in Defendant Jandruko's position would have believed that his conduct was reasonable under the clearly established law that sexual harassment that creates a hostile work environment is illegal.

154.    Defendant Jandruko is not entitled to qualified immunity.

155.    The sexual harassment of Plaintiff by Defendant Jandruko was accomplished under the color of law and subjected and caused Plaintiff to be deprived of rights, privileges, or immunities secured by the Equal Protection Clause to the United States Constitution.

156.    The foregoing actions of Defendant Jandruko were intentional or were willful, wanton and in reckless disregard of Plaintiff's rights.

157.    As a result of the sexual harassment of Plaintiff by Defendant Jandruko, Plaintiff suffered and continues to suffer great emotional harm, anguish, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame, and humiliation.

158.    These injuries were directly and only caused by the acts of the Defendants in this case including Defendant Jandruko.

159.   Plaintiff seeks compensatory and punitive damages and costs against Defendant Jandruko, and such other relief as justice may require.

## Count Four

## Defendant Lomerson

### Sexual Harassment
### (Equal Protection Clause and 42 USCA § 1983)

160.   To state a viable claim under 42 USCA § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.

161.   Sexual harassment in public employment violates the Equal Protection Clause of the Fourteenth Amendment and is therefore actionable under 42 USCA § 1983. *Lauderdale*, 512 F.3d at 166.

162.   Defendant Lomerson was acting under color of state law when he performed acts constituting sexual harassment of Plaintiff.

163.   For sexual harassment to be actionable, the harassment must be severe or pervasive. *Id.*

164.   The required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct. *Lauderdale* F.3d at 163.

165.   An egregious, yet isolated, incident can be severe enough to alter the terms, conditions, or privileges of employment and constitute a hostile work environment. *Id.*

166.    Likewise, frequent incidents of harassment, though not severe, can reach the level of "pervasive," thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists. *Id.*

167.    Defendant Lomerson's behavior rises to the level of actionable harassment as it is severe and pervasive.

168.    Defendant Lomerson subjected Plaintiff to sexual innuendo and unwanted sexual advances.

169.    Defendant Lomerson created tasks for Plaintiff that were outside of normal procedure so that Defendant Lomerson and Plaintiff would be alone together and Defendant Lomerson could attempt to become physical with Plaintiff.

170.    Defendant Lomerson started showing up to Plaintiff's house unannounced and sent Plaintiff text messages that indicated he knew she was home when she wouldn't answer the door.

171.    Defendant Lomerson's conduct escalated to an incident where he showed up at Plaintiff's house and had intercourse with Plaintiff, who only acquiesced because she justifiably felt that rejection would negatively impact her employment.

172.    On November 20, 2017, Defendant Lomerson was present when Defendant Burch slapped Plaintiff's buttocks so hard, he left a red handprint on Plaintiff's skin.

173.    Defendant Lomerson did nothing to discipline Defendant Burch.

174.    The right to be free from sexual harassment that creates a hostile work environment is clearly established. *Lauderdale* F.3d at 166.

175.    Sexual harassment is objectively offensive and unreasonable, and qualified immunity can never offer protection for sexual harassment. Id.

176.    No reasonable person in Defendant Lomerson's position would have believed that his conduct was reasonable under the clearly established law that sexual harassment that creates a hostile work environment is illegal.

177.    Defendant Lomerson is not entitled to qualified immunity.

178.    The sexual harassment of Plaintiff by Defendant Lomerson was accomplished under the color of law and subjected and caused Plaintiff to be deprived of rights, privileges, or immunities secured by the Equal Protection Clause to the United States Constitution.

179.    The foregoing actions of Defendant Lomerson were intentional or were willful, wanton and in reckless disregard of Plaintiff's rights.

180.    As a result of the sexual harassment of Plaintiff by Defendant Lomerson, Plaintiff suffered and continues to suffer great emotional harm, anguish, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame, and humiliation.

181.    These injuries were directly and only caused by the acts of the Defendants in this case including Defendant Lomerson.

182.    Plaintiff seeks compensatory and punitive damages and costs against Defendant Lomerson, and such other relief as justice may require.

**Count Five**

**Defendant Gutierrez**

**Sexual Harassment**<br>**(Equal Protection Clause and 42 USCA § 1983)**

183.    To state a viable claim under 42 USCA § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2)

34

demonstrate that the alleged deprivation was committed by a person acting under color of state law.

184.   Sexual harassment in public employment violates the Equal Protection Clause of the Fourteenth Amendment and is therefore actionable under 42 USCA § 1983. *Lauderdale*, 512 F.3d at 166.

185.   Defendant Gutierrez was acting under color of state law when he performed acts constituting sexual harassment of Plaintiff.

186.   For sexual harassment to be actionable, the harassment must be severe or pervasive. *Id.*

187.   The required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct. *Lauderdale* F.3d at 163.

188.   An egregious, yet isolated, incident can be severe enough to alter the terms, conditions, or privileges of employment and constitute a hostile work environment. *Id.*

189.   Likewise, frequent incidents of harassment, though not severe, can reach the level of "pervasive," thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists. *Id.*

190.   Defendant Gutierrez's behavior rises to the level of actionable harassment as it is severe and pervasive.

191.   Defendant Gutierrez subjected Plaintiff to sexual innuendo and unwanted sexual advances for months.

192.   Defendant Gutierrez's inappropriate sexual advances escalated to him sending graphic and inappropriate text messages to Plaintiff.

193.    Like Defendant Lomerson, Defendant Gutierrez began showing up at Plaintiff's house unannounced and made explicit sexual advances toward Plaintiff.

194.    In late 2017, Defendant Gutierrez opened the door to the female quarters where Plaintiff was asleep, locked the door behind him, and forced himself onto Plaintiff. Plaintiff did not consent to the sexual encounter, but again, like with Defendant Lomerson, justifiably felt that she could not refuse, or her employment would be negatively impacted.

195.    In October of 2017, Defendant Gutierrez sent a text for Jane Doe to meet him in his quarters where he also kept an office. After entering the room, Jane Doe saw that they were alone and Defendant Gutierrez locked the door behind her as she entered.

196.    After Jane Doe entered the room, Defendant Gutierrez said "Get out of them" indicating that she needed to remove her clothes. Jane Doe refused and once again told Defendant Gutierrez to leave her alone. Defendant Gutierrez did not accept Jane Doe's response and once again forced himself upon her.

197.    The right to be free from sexual harassment that creates a hostile work environment is clearly established. *Lauderdale* F.3d at 166.

198.    Sexual harassment is objectively offensive and unreasonable, and qualified immunity can never offer protection for sexual harassment. Id.

199.    No reasonable person in Defendant Gutierrez's position would have believed that his conduct was reasonable under the clearly established law that sexual harassment that creates a hostile work environment is illegal.

200.    Defendant Gutierrez is not entitled to qualified immunity.

201.    The sexual harassment of Plaintiff by Defendant Gutierrez was accomplished under the color of law and subjected and caused Plaintiff to be deprived of

rights, privileges, or immunities secured by the Equal Protection Clause to the United States Constitution.

202.   The foregoing actions of Defendant Gutierrez were intentional or were willful, wanton and in reckless disregard of Plaintiff's rights.

203.   As a result of the sexual harassment of Plaintiff by Defendant Gutierrez, Plaintiff suffered and continues to suffer great emotional harm, anguish, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame, and humiliation.

204.   These injuries were directly and only caused by the acts of the Defendants in this case including Defendant Gutierrez.

205.   Plaintiff seeks compensatory and punitive damages and costs against Defendant Gutierrez, and such other relief as justice may require.

**Count Six**

**Defendant Lindop**

**Sexual Harassment**
**(Equal Protection Clause and 42 USCA § 1983)**

206.   To state a viable claim under 42 USCA § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.

207.   Sexual harassment in public employment violates the Equal Protection Clause of the Fourteenth Amendment and is therefore actionable under 42 USCA § 1983. *Lauderdale*, 512 F.3d at 166.

208.   Defendant Lindop was acting under color of state law when he performed acts constituting sexual harassment of Plaintiff.

209.    For sexual harassment to be actionable, the harassment must be severe or pervasive. *Id.*

210.    The required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct. *Lauderdale* F.3d at 163.

211.    An egregious, yet isolated, incident can be severe enough to alter the terms, conditions, or privileges of employment and constitute a hostile work environment. *Id.*

212.    Likewise, frequent incidents of harassment, though not severe, can reach the level of "pervasive," thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists. *Id.*

213.    Defendant Lindop's behavior rises to the level of actionable harassment as it is severe and pervasive.

214.    In November of 2017, while Plaintiff was working out in the fire station recreation room, Defendant Lindop walked in and began touching his penis while watching Plaintiff use the treadmill.

215.    On November 20, 2017, Plaintiff sent photographic evidence to Defendant Lindop that Defendant Burch had slapped her buttocks so hard that he left a red handprint. In response to the sexual assault, Defendant Lindop altered the photo by placing "finger" and "kiss" emojis over Plaintiff's buttocks and sent it back to Plaintiff.

216.    In December of 2017, while Plaintiff was working out in the fire station, Defendant Lindop again came into the fitness center. However, this time, he pulled out his erect penis and began masturbating to Plaintiff while she was on the treadmill.

217.    The right to be free from sexual harassment that creates a hostile work environment is clearly established. *Lauderdale* F.3d at 166.

218.   Sexual harassment is objectively offensive and unreasonable, and qualified immunity can never offer protection for sexual harassment. *Id.*

219.   No reasonable person in Defendant Lindop's position would have believed that his conduct was reasonable under the clearly established law that sexual harassment that creates a hostile work environment is illegal.

220.   Defendant Lindop is not entitled to qualified immunity.

221.   The sexual harassment of Plaintiff by Defendant Lindop was accomplished under the color of law and subjected and caused Plaintiff to be deprived of rights, privileges, or immunities secured by the Equal Protection Clause to the United States Constitution.

222.   The foregoing actions of Defendant Lindop were intentional or were willful, wanton and in reckless disregard of Plaintiff's rights.

223.   As a result of the sexual harassment of Plaintiff by Defendant Lindop, Plaintiff suffered and continues to suffer great emotional harm, anguish, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame, and humiliation.

224.   These injuries were directly and only caused by the acts of the Defendants in this case including Defendant Lindop.

225.   Plaintiff seeks compensatory and punitive damages and costs against Defendant Lindop, and such other relief as justice may require.

## Count Seven

## Defendant Burch

### Sexual Harassment
### (Equal Protection Clause and 42 USCA § 1983)

226.   To state a viable claim under 42 USCA § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.

227.   Sexual harassment in public employment violates the Equal Protection Clause of the Fourteenth Amendment and is therefore actionable under 42 USCA § 1983. *Lauderdale*, 512 F.3d at 166.

228.   Defendant Burch was acting under color of state law when he performed acts constituting sexual harassment of Plaintiff.

229.   For sexual harassment to be actionable, the harassment must be severe or pervasive. *Id.*

230.   The required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct. *Lauderdale* F.3d at 163.

231.   An egregious, yet isolated, incident can be severe enough to alter the terms, conditions, or privileges of employment and constitute a hostile work environment. *Id.*

232.   Likewise, frequent incidents of harassment, though not severe, can reach the level of "pervasive," thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists. *Id.*

233.    Defendant Burch's behavior rises to the level of actionable harassment as it is severe and pervasive.

234.    On November 20, 2017, Plaintiff took her daughter to work. While Plaintiff's daughter was showing the fire department her dance routine, Plaintiff bent over to help her daughter spin.

235.    While Plaintiff was bent over, Defendant Burch cocked his hand and slapped Plaintiff's buttocks so hard that he left a red handprint—all of this right in front of Plaintiff's 8-year-old daughter.

236.    The right to be free from sexual harassment that creates a hostile work environment is clearly established. *Lauderdale* F.3d at 166.

237.    Sexual harassment is objectively offensive and unreasonable, and qualified immunity can never offer protection for sexual harassment. *Id.*

238.    No reasonable person in Defendant Burch's position would have believed that his conduct was reasonable under the clearly established law that sexual harassment that creates a hostile work environment is illegal.

239.    Defendant Burch is not entitled to qualified immunity.

240.    The sexual harassment of Plaintiff by Defendant Burch was accomplished under the color of law and subjected and caused Plaintiff to be deprived of rights, privileges, or immunities secured by the Equal Protection Clause to the United States Constitution.

241.    The foregoing actions of Defendant Burch were intentional or were willful, wanton and in reckless disregard of Plaintiff's rights.

242. As a result of the sexual harassment of Plaintiff by Defendant Burch, Plaintiff suffered and continues to suffer great emotional harm, anguish, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame, and humiliation.

243. These injuries were directly and only caused by the acts of the Defendants in this case including Defendant Burch.

244. Plaintiff seeks compensatory and punitive damages and costs against Defendant Burch, and such other relief as justice may require.

**Count Eight**

**Defendant Stevens**

**Supervisory Liability**
**(42 U.S.C § 1983)**

245. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein and asserts that the same are moving factors which have resulted in the violation of Plaintiff's civil rights.

246. Plaintiff would show that Defendant Stevens is liable in his individual capacity based on supervisory liability for failure to supervise employees under his control.

247. Supervisory liability is demonstrated when (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.

248. Defendant Stevens failed to supervise Defendants Jandruko, Lomerson, Lindop, and Guttierez regarding sexual harassment of Plaintiff and the hostile workplace it was causing.

249.   In 2017, Defendant Stevens was the Executive Assistant Fire Chief and supervised Defendants Jandruko, Lomerson, Lindop, and Guttierez.

250.   Plaintiff reported sexual harassment to Defendant Stevens on multiple occasions and each time the perpetrator was not disciplined; however, Plaintiff was transferred to a new station to her detriment.

251.   This failure to discipline essentially ratified the perpetrators' behavior as they saw their supervisor, Defendant Stevens, was not going to punish them for this behavior.

252.   There was a direct link between Defendant Stevens' failure to supervise Defendants Jandruko, Lomerson, Lindop, and Guttierez and the sexual harassment which caused a hostile workplace for Plaintiff.

253.   Plaintiff reported Defendant Jandruko's unwanted sexual advances and inappropriate text message regarding lingerie to Defendant Stevens, who did not discipline Defendant Jandruko. Instead, Defendant Stevens told Plaintiff "not to mention [Defendant Jandruko's conduct] or discuss [it] with anyone." Defendant Stevens then reassigned Plaintiff to a new fire station, interrupting her schedule and routine. Instead of disciplining and supervising Defendant Jandruko for his inappropriate sexual harassment, Defendant Stevens ratified his behavior by showing the other Fort Worth Fire Department employees, including Defendants Lomerson, Lindop, and Guttierez, that they would not be punished for sexual harassment. Defendant Stevens demonstrated to his subordinate employees that the complaining females, such as Plaintiff in this case, would be transferred and they would receive no punishment. This ratification, failure to discipline, and failure to supervise by Defendant Stevens caused the violation of Plaintiff's rights by way of sexual harassment which caused a hostile workplace.

254.    After Defendant Stevens failed to supervise or discipline Defendant Jandruko for his inappropriate sexual harassment of Plaintiff, Defendants Lomerson, Lindop, and Guttierez were empowered to continue the sexual harassment on Plaintiff.

255.    Defendant Stevens' failure to supervise or discipline resulted in the sexual harassment by Defendants Jandruko, Lomerson, Lindop, and Guttierez that is discussed in the above paragraphs and incorporated into this cause of action.

256.    Defendant Stevens' failure to supervise amounts to deliberate indifference to the rights of Plaintiff not to be subjected to sexual harassment causing a hostile workplace.

257.    Defendant Stevens was aware that by failing to supervise or discipline Fort Worth Fire Department male employees, including Defendants Jandruko, Lomerson, Lindop, and Guttierez, the female employees at the Fort Worth Fire Department would be subjected to continued and ongoing sexual harassment, which is exactly what happened in this case.

258.    Defendant Stevens knew that failing to supervise or discipline Fort Worth Fire Department male employees for behavior constituting sexual harassment, that the constitutional rights of female employees, such as Plaintiff, would be violated due to the clearly established law at the time that prohibited sexual harassment causing a hostile workplace.

259.    Defendant Stevens was aware when he chose not to supervise or discipline the male Fort Worth Fire Department employees, that the constitutional violations caused by the sexual harassment would result in serious harm to the female employees of the Fort Worth Fire Department.

260.   Knowing that his failure to supervise or discipline the Fort Worth Fire Department male employees, including Defendants Jandruko, Lomerson, Lindop, and Gutierrez, would result in serious harm in the form of constitutional violations of Fort Worth Fire Department female employees, Defendant Stevens made the intentional decision not to supervise or discipline the male employees.

261.   The right to be free from sexual harassment that creates a hostile work environment is clearly established. *Lauderdale* F.3d at 166.

262.   Sexual harassment is objectively offensive and unreasonable, and qualified immunity can never offer protection for sexual harassment. *Id.*

263.   No reasonable person in Defendant Stevens' position would have believed that his conduct was reasonable under the clearly established law that sexual harassment that creates a hostile work environment is illegal.

264.   Defendant Stevens is not entitled to qualified immunity.

265.   The sexual harassment of Plaintiff which was directly caused by Defendant Stevens' failure to supervise or discipline was accomplished under the color of law and subjected and caused Plaintiff to be deprived of rights, privileges, or immunities secured by the Equal Protection Clause to the United States Constitution.

266.   The foregoing actions of Defendant Stevens were intentional or were willful, wanton and in reckless disregard of Plaintiff's rights.

267.   As a result of the sexual harassment of Plaintiff directly caused by Defendant Stevens' failure to supervise or discipline, Plaintiff suffered and continues to suffer great emotional harm, anguish, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame, and humiliation.

268.   These injuries were directly and only caused by the acts of the Defendants in this case including Defendant Stevens.

269.   Plaintiff seeks compensatory and punitive damages and costs against Defendant Stevens, and such other relief as justice may require.

## Count Nine

### Defendant Lomerson

### Supervisory Liability
### (42 U.S.C § 1983)

270.   Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein and asserts that the same are moving factors which have resulted in the violation of Plaintiff's civil rights.

271.   Plaintiff would show that Defendant Lomerson is liable in his individual capacity based on supervisory liability for failure to supervise employees under his control.

272.   Supervisory liability is demonstrated when (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.

273.   Defendant Lomerson failed to supervise Defendants Burch regarding sexual harassment of Plaintiff and the hostile workplace it was causing.

274.   Defendant Lomerson supervised Defendant Burch and Defendant Lindop.

275.   Defendant Lomerson was present when Defendant Burch slapped Plaintiff's buttocks so hard, he left a red handprint on Plaintiff's skin. Defendant Lomerson did

nothing to supervise or discipline Defendant Burch regarding the sexual harassment of Plaintiff in his presence.

276.    This failure to discipline essentially ratified the perpetrators' behavior as they saw their supervisor, Defendant Lomerson, was not going to punish them for this behavior.

277.    There was a direct link between Defendant Lomerson's failure to supervise Defendants Burch and the sexual harassment which caused a hostile workplace for Plaintiff.

278.    After Defendant Lomerson failed to supervise or discipline Defendant Burch for his inappropriate sexual harassment of Plaintiff, other male employees such as Defendant Lindop were empowered to continue the sexual harassment on Plaintiff.

279.    After Defendant Lomerson failed to supervise or discipline Defendant Burch, Defendant Lindop felt empowered to send Plaintiff an altered picture of the photographic evidence of Defendant Burch's sexual assault on Plaintiff. The picture included "finger" and "kiss" emojis superimposed into the photograph on top of Plaintiff's buttocks. Defendant Lindop then felt empowered to approach Plaintiff in the recreation room while Plaintiff was on the treadmill, pull out his penis, and masturbate to Plaintiff.

280.    Defendant Lomerson's failure to supervise or discipline resulted in the sexual harassment by Defendants Burch and Lindop that is discussed in the above paragraphs and incorporated into this cause of action.

281.    Defendant Lomerson's failure to supervise amounts to deliberate indifference to the rights of Plaintiff not to be subjected to sexual harassment causing a hostile workplace.

282.   Defendant Lomerson was aware that by failing to supervise or discipline Fort Worth Fire Department male employees, including Defendant Burch, the female employees at the Fort Worth Fire Department would be subjected to continued and ongoing sexual harassment, which is exactly what happened in this case.

283.   Defendant Lomerson knew that by failing to supervise or discipline Fort Worth Fire Department male employees for behavior constituting sexual harassment, that the constitutional rights of female employees, such as Plaintiff, would be violated due to the clearly established law at the time that prohibited sexual harassment causing a hostile workplace.

284.   Defendant Lomerson was aware when he chose not to supervise or discipline the male Fort Worth Fire Department employees, that the constitutional violations caused by the sexual harassment would result in serious harm to the female employees of the Fort Worth Fire Department.

285.   Knowing that his failure to supervise or discipline the Fort Worth Fire Department male employees, including Defendant Burch, would result in serious harm in the form of constitutional violations of Fort Worth Fire Department female employees, Defendant Lomerson made the intentional decision not to supervise or discipline the male employees.

286.   The right to be free from sexual harassment that creates a hostile work environment is clearly established. *Lauderdale* F.3d at 166.

287.   Sexual harassment is objectively offensive and unreasonable, and qualified immunity can never offer protection for sexual harassment. *Id*.

288.   No reasonable person in Defendant Lomerson's position would have believed that his conduct was reasonable under the clearly established law that sexual harassment that creates a hostile work environment is illegal.

289.   Defendant Lomerson is not entitled to qualified immunity.

290.   The sexual harassment of Plaintiff which was directly caused by Defendant Lomerson's failure to supervise or discipline was accomplished under the color of law and subjected and caused Plaintiff to be deprived of rights, privileges, or immunities secured by the Equal Protection Clause to the United States Constitution.

291.   The foregoing actions of Defendant Lomerson were intentional or were willful, wanton and in reckless disregard of Plaintiff's rights.

292.   As a result of the sexual harassment of Plaintiff directly caused by Defendant Lomerson's failure to supervise or discipline, Plaintiff suffered and continues to suffer great emotional harm, anguish, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame, and humiliation.

293.   These injuries were directly and only caused by the acts of the Defendants in this case including Defendant Lomerson.

294.   Plaintiff seeks compensatory and punitive damages and costs against Defendant Lomerson, and such other relief as justice may require.

## Count Ten

## Defendant Lindop

## Supervisory Liability
## (42 U.S.C § 1983)

295.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein and asserts that the same are moving factors which have resulted in the violation of Plaintiff's civil rights.

296.    Plaintiff would show that Defendant Lindop is liable in his individual capacity based on supervisory liability for failure to supervise employees under his control.

297.    Supervisory liability is demonstrated when (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.

298.    Defendant Lindop failed to supervise Defendant Burch regarding sexual harassment of Plaintiff and the hostile workplace it was causing.

299.    Defendant Lindop supervised Defendant Burch.

300.    On November 20, 2017, Plaintiff sent photographic evidence to Defendant Lindop that Defendant Burch had slapped her buttocks so hard that he left a red handprint. In response to the sexual assault, Defendant Lindop altered the photo by placing "finger" and "kiss" emojis over Plaintiff's buttocks and sent it back to Plaintiff.

301.    Defendant Lindop effectively ratified Defendant Burch's behavior and failed to supervise or discipline Defendant Burch.

302.   This failure to discipline essentially ratified the perpetrators' behavior as they saw their supervisor, Defendant Lindop, was not going to punish them for this behavior.

303.   There was a direct link between Defendant Lindop's failure to supervise Defendants Burch and the sexual harassment which caused a hostile workplace for Plaintiff.

304.   After Defendant Lindop failed to supervise or discipline Defendant Burch for his inappropriate sexual harassment of Plaintiff, other male employees were empowered to continue the sexual harassment on Plaintiff.

305.   Defendant Lindop's failure to supervise or discipline resulted in the sexual harassment by Lindop that is discussed in the above paragraphs and incorporated into this cause of action, as he felt that no one would be able to stop him.

306.   Defendant Lindop's failure to supervise amounts to deliberate indifference to the rights of Plaintiff not to be subjected to sexual harassment causing a hostile workplace.

307.   Defendant Lindop was aware that by failing to supervise or discipline Fort Worth Fire Department male employees, including Defendant Burch, the female employees at the Fort Worth Fire Department would be subjected to continued and ongoing sexual harassment, which is exactly what happened in this case.

308.   Defendant Lindop knew that by failing to supervise or discipline Fort Worth Fire Department male employees for behavior constituting sexual harassment, that the constitutional rights of female employees, such as Plaintiff, would be violated due to the clearly established law at the time that prohibited sexual harassment causing a hostile workplace.

309.   Defendant Lindop was aware when he chose not to supervise or discipline the male Fort Worth Fire Department employees, that the constitutional violations caused by the sexual harassment would result in serious harm to the female employees of the Fort Worth Fire Department.

310.   Knowing that his failure to supervise or discipline the Fort Worth Fire Department male employees, including Defendant Burch, would result in serious harm in the form of constitutional violations of Fort Worth Fire Department female employees, Defendant Lomerson made the intentional decision not to supervise or discipline the male employees.

311.   The right to be free from sexual harassment that creates a hostile work environment is clearly established. *Lauderdale* F.3d at 166.

312.   Sexual harassment is objectively offensive and unreasonable, and qualified immunity can never offer protection for sexual harassment. *Id*.

313.   No reasonable person in Defendant Lindop's position would have believed that his conduct was reasonable under the clearly established law that sexual harassment that creates a hostile work environment is illegal.

314.   Defendant Lindop is not entitled to qualified immunity.

315.   The sexual harassment of Plaintiff which was directly caused by Defendant Lindiop's failure to supervise or discipline was accomplished under the color of law and subjected and caused Plaintiff to be deprived of rights, privileges, or immunities secured by the Equal Protection Clause to the United States Constitution.

316.   The foregoing actions of Defendant Lindop were intentional or were willful, wanton and in reckless disregard of Plaintiff's rights.

317. As a result of the sexual harassment of Plaintiff directly caused by Defendant Lindop's failure to supervise or discipline, Plaintiff suffered and continues to suffer great emotional harm, anguish, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame, and humiliation.

318. These injuries were directly and only caused by the acts of the Defendants in this case including Defendant Lindop.

319. Plaintiff seeks compensatory and punitive damages and costs against Defendant Lindop, and such other relief as justice may require.

## VII.
## EXEMPLARY DAMAGES

320. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

321. When viewed objectively from the standpoint of Defendants Fort Worth, Texas, Stevens, Jandruko, Lomerson, Gutierrez, Lindop, and Burch at the time of the occurrence, said Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further, the actions and/or inactions taken by the aforementioned Defendants was conducted with malice and/or reckless indifference to the constitutionally and statutorily protected rights of Plaintiff

322. As a direct and proximate and producing cause and the intentional, egregious, malicious conduct by Defendants Stevens, Jandruko, Lomerson, Gutierrez, Lindop, and Burch, Plaintiff is entitled to recover exemplary damages in an amount within the jurisdictional limits of this Court.

## VIII.
## DAMAGES

323.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

324.    Plaintiff's injuries were a foreseeable event.

325.    Those injuries were directly and proximately caused by Defendants' actions and inactions. As a result, Plaintiff is entitled to recover all actual damages allowed by law.

326.    Additionally, Plaintiff contends the individual Defendants' conduct constitutes malice, evil intent, or reckless or callous indifference to the constitutionally protected rights of Plaintiff.  As a result, Plaintiff is entitled to punitive damages against Defendants Fort Worth, Texas, Stevens, Jandruko, Lomerson, Gutierrez, Lindop, and Burch.

327.    As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff was forced to suffer:

   a.    Physical harm;

   b.    Physical pain and suffering in the past and future;

   c.    Emotional distress, torment, and mental anguish in the past and future;

   d.    Medical Expenses

   e.    Past lost wages and benefits;

   f.    Future lost wages and benefits.

328.    In addition, Plaintiff also seeks pre-judgment interest and post-judgment interest at the maximum amount allowed by law, and the costs of suit.

## IX.
### ATTORNEY'S FEES

329.   Plaintiff is entitled to and hereby demands attorney's fees under 28 USC § 2678 and 42 U.S.C. § 2000e et. seq. 2000e.

## X.
### JURY REQUEST

330.   Plaintiff respectfully requests a jury trial.

## XI.
### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendants, for an amount in excess of jurisdictional minimum of this court. Plaintiff further prays for all other relief, both legal and equitable, to which she may show herself justly entitled.

Respectfully submitted,

SCOTT H. PALMER
State Bar No. 00797196
JAMES P. ROBERTS
State Bar No. 24105721
NILES ILLICH
State Bar No. 24069969
GRANT GERLEMAN
State Bar No. 24083065
**SCOTT H. PALMER, P.C.**
15455 Dallas Parkway,
Suite 540, LB 32
Dallas, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com
niles@scottpalmerlaw.com
grant@scottpalmerlaw.com

GREGORY H. BEVEL
State Bar No. 02275800
WESLEY H. M. GOULD
State Bar No. 24095214
**ROCHELLE MCCULLOUGH, LLP**
325 N. St. Paul Street, Suite 4500
Dallas, Texas 75201
(214) 953-0182 Telephone
(214) 953-0185 Facsimile
wgould@romclaw.com
greg.bevel@romclaw.com
**ATTORNEYS FOR PLAINTIFF**

JS 44 (Rev. 06/17) - TXND (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Female Firefighter Jane Doe

**DEFENDANTS**
Fort Worth, Texas, Keven Stevens, individually, Fred Jandruko, individually, Bob Lomerson, individually (see attached page for additional Defendants)

**(b)** County of Residence of First Listed Plaintiff   Johnson
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Tarrant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Scott H. Palmer / James P. Roberts / Niles Illich / Grant Gerleman
Scott H. Palmer, P.C.15455 Dallas Pkwy, Suite 540, LB 32, Dallas, TX 75001

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### CIVIL RIGHTS
- ☒ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty
**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1331 and § 1343 ; 42 U.S.C. § 1983 ; 42 U.S.C. § 2000e et. seq.
Brief description of cause:
Sexual harassment and sexual assault by supervisors and adoption of illicit conduct by the Fort Worth Fire Department

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ TBD at Trial

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE  November 27, 2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

## CIVIL COVER SHEET ATTACHMENT PAGE

**Defendants**
Fort Worth, Texas
Kev Stevens, individually
Fred Jandruko, individually
Bob Lomerson, individually
Dustin Lindop, individually
Bryan Burch, individually


**Attorneys for Plaintiff**
SCOTT H. PALMER
State Bar No. 00797196
JAMES P. ROBERTS
State Bar No. 24105721
NILES ILLICH
State Bar No. 24069969
GRANT GERLEMAN
State Bar No. 24083065
**SCOTT H. PALMER, P.C.**
15455 Dallas Parkway,
Suite 540, LB 32
Dallas, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com
niles@scottpalmerlaw.com
grant@scottpalmerlaw.com

GREGORY H. BEVEL
State Bar No. 02275800
WESLEY H. M. GOULD
State Bar No. 24095214
**ROCHELLE MCCULLOUGH, LLP**
325 N. St. Paul Street, Suite 4500
Dallas, Texas 75201
(214) 953-0182 Telephone
(214) 953-0185 Facsimile
wgould@romclaw.com
greg.bevel@romclaw.com
***ATTORNEYS FOR PLAINTIFF***